NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0203n.06

No. 20-5085

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| BRAD ANTHONY MAJORS, | ) | COURT FOR THE EASTERN |
| Defendant-Appellant. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| | ) | |

FILED
Apr 20, 2021
DEBORAH S. HUNT, Clerk

BEFORE:     SUHRHEINRICH, SILER, and SUTTON, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

## I. BACKGROUND

In November of 2018 Brad Majors' eight-year-old biological daughter told her mother that her father had been showing her pornography and engaging in sexual acts with her for about a year. She showed her mother a box of sex toys that Majors had hidden in a crawl space in her bedroom and explained that her father had been using them on her, at which point her mother contacted the police and removed her daughter from the family home. The child explained to authorities that her father had made her perform numerous sex acts, including using the sex toys on herself, oral sex, vaginal penetration, and that one time he had made her pee into his mouth. She stated that he would offer to buy her toys if she performed sexual acts on him and that he had told her she would get in trouble if she told anyone about what they were doing. She also revealed

that her father had taken pictures and videos of several instances of the abuse and shared it on an "app."

When confronted by the police, Majors told the officers that he "assume[d] everything she told you is the truth." He confessed in detail to many instances of abuse, though he denied ever penetrating her, instead asserting that "his penis was just inside the lips of his daughter's vagina, but not inside the vagina." Majors also admitted that he made videos or took pictures of the abuse "about every time," and that he had shared two of those videos and two of those photographs online. A search of Majors' cellphone revealed four videos of Majors' abusing his daughter, as well as over a dozen videos and over 50 images of child pornography.

In May of 2019 Majors pleaded guilty to sexually exploiting a child for the production of child pornography in violation of 18 U.S.C. § 2251(a), and to possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The production count has a statutory sentencing range of a minimum imprisonment term of fifteen years and maximum of thirty years, and the possession count carries a penalty range of zero to twenty years' imprisonment. *See* 18 U.S.C. § 2251(e); 18 U.S.C. § 2252A(b)(2).

Majors' presentence report calculated that his combined offense level was 44 after accounting for a three-level reduction for acceptance of responsibility. Because the maximum offense level under the sentencing guidelines is 43, the report used this as his final offense level and calculated Majors' criminal history category as I. The resulting guidelines term was life in prison. Because the guidelines sentence exceeded the statutorily authorized maximum, the effective guidelines range became 600 months.

Because there were multiple convictions and a guidelines range greater than the statutory maximum, the district court imposed consecutive sentences, pursuant to U.S.S.G. § 5G1.2(d), in

order to achieve the guidelines effectively proscribed sentence of 600 months' imprisonment. Majors did not object to this calculation, but did move for a downward variance, specifically asking the court to impose the sentences concurrently rather than consecutively. In support of the motion, Majors filed a psychosexual risk assessment, which calculated his recidivism risk to be low to moderate and suggested that Majors was amenable to sexual-offender treatment, positing that such treatment could lower Majors' risk of recidivism. The government opposed the motion for a downward variance and proposed assigning Majors a sentence of the full 600 months.

At sentencing, Majors asked to call the author of the psychosexual risk assessment, Dr. Adler, to further explain his findings. The court asked Majors' counsel whether Dr. Adler would add anything that was not already in the written report. Counsel told the court that Dr. Adler did not have anything "additional to go [in]to the report" but wanted to further explain the report's findings. The court stated that it had "spent a lot of time" reviewing the report, then denied the request to call Dr. Adler as a witness "[u]nless he has something in addition to what's in the report to add."

Majors argued that the sentences for the two counts should run concurrently, stating that he believed the statutory maximum of count one (360 months) encapsulated the totality of the indictment and could reasonably be used as an approximation of the guidelines sentence of life imprisonment. The court suggested that 360 months was a somewhat arbitrary approximation of a life sentence and posited that an alternative method of calculation would be to consult the Social Security life expectancy tables. The court stated that based on its recollection of the life expectancy tables, Majors could expect to live roughly another 46 years from the time of sentencing.

The district court denied Majors' request for a downward variance. It reiterated the egregiousness of Majors' conduct, saying, "[i]t's hard to imagine an adult committing a more serious offense than what we have here." The court further noted that Majors had engaged in manipulation and deception to enable him to continue committing the abuse. The court weighed the § 3553(a) sentencing factors, finding that the most important consideration was that the sentence must reflect the seriousness of the offense, and that deterrence was also an important factor to be weighed. Majors again pointed out that the proper numerical expression of a life sentence had not been fully determined. The child's mother then read a victim impact statement written by Majors' daughter, as well as some of her own statement. The court sentenced Majors to the adjusted guidelines sentence of 600 months' imprisonment to be followed by fifteen years of supervised release.

At the conclusion of sentencing, Majors objected to the sentence as "both substantively and procedurally unreasonable." He asserted that the court failed to properly account for some of the § 3553(a) factors, "such as Mr. Majors' history and characteristics, moderate level of risk to reoffend, and high amenability to treatment" and that it "potentially also . . . bas[ed] the sentence on some facts not contained in the record." He argued that the court did not give enough weight to the characteristics mentioned above and "gave undue weight" to other sentencing factors. He now brings both procedural and substantive reasonableness challenges on appeal.

## II. ANALYSIS

### A. The district court did not procedurally err in its consideration of the psychosexual risk assessment.

Majors raises three procedural issues concerning the psychosexual risk assessment report and the court's decision not to allow Dr. Adler to testify further about the report's contents. We review the procedural reasonableness of a sentence for abuse of discretion. *United States v.*

*Vowell*, 516 F.3d 503, 509 (6th Cir. 2008). This includes the review of a district court's limitation on expert testimony. *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 391 (6th Cir. 2015). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009) (internal quotation marks omitted). This is a deferential standard of review, where "factual findings will stand unless clearly erroneous and legal conclusions will stand unless our fresh review leads to a contrary conclusion." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018).

Majors first argues that the district court procedurally erred by failing to make proper factual findings regarding the psychosexual risk report, pointing out that the court did not comment on the report's conclusion that Majors was not predatory and was highly amenable to treatment.[1] Majors suggests that this conduct is similar to what happened in *United States v. Pritchard*, where this court found that the district court had procedurally erred when it failed to "make any findings regarding the psychologist's testimony, and therefore fail[ed] to address Defendant's arguments that he is not a pedophile and is unlikely to re-offend." 392 F. App'x. 433, 442 (6th Cir. 2010). But the case before us is meaningfully distinguishable. In *Pritchard*, we found that the there was "no evidence in the record that the district court 'listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account." *Id.* at 441 (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)). Here, by contrast, the court discussed the report at some length, specifically mentioning the report's admitted limitations as well as its methodology. The court explained that it felt the "report was

---

[1] The court is required to make factual findings on controverted matters, or to find that no finding is necessary. Fed. R. Crim. P. 32(i)(3)(B). Here, the government agreed that the psychosexual report "was very well done," and did not seek to controvert any of its factual findings.

very thorough" and highlighted that the report "describes in some detail what goes into determining that the defendant falls within the moderate risk to reoffend." This lengthy discussion of the contents of the psychosexual report demonstrates that the court "considered [Majors'] arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

Majors next asserts that the court committed error by not allowing him to call Dr. Adler as an expert witness to further explain the findings in the report.[2] The district court has "broad discretion to place limits" on testimony "to prevent delay, waste of time, and needless presentation of cumulative evidence." *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997). In *United States v. Surratt*, the government sought to admit expert testimony about whether the defendant was a predatory pedophile. 87 F.3d 814, 817 (6th Cir. 1996). The court did not allow further expert testimony when it had "already concluded from psychiatric evidence submitted by the government that the defendant is, in fact, a predatory pedophile." *Id*. Here, the findings of the psychosexual report were undisputed, and the court had clearly read the report very carefully. The court even specifically asked whether Dr. Adler would add anything that was not already outlined in the report and was told by Majors' counsel that he would not. It was therefore not an abuse of discretion to determine that there was no need for Dr. Adler to simply reiterate the conclusions that were already outlined in the report.[3]

---

[2] The government suggests that because Majors did not specifically object to the limitation on testimony at sentencing, we should review for plain error. However, Majors did object to the court giving undue weight to some factors over others, which could be construed as encompassing the court's refusal to hear further elaboration on the factors analyzed in the report. Out of an abundance of caution, we therefore proceed under the more defendant-friendly abuse of discretion standard.

[3] While "admitting both the report and the testimony would have been the better practice," we are not reviewing for whether the court engaged in best practices, we are reviewing for an abuse of discretion. *See Pritchard*, 392 F. App'x. at 438.

Majors also contends that the district court procedurally abused its discretion when it offered its own conclusion that Majors posed a serious risk to the community, suggesting that this was erroneous fact-finding since this conclusion arguably contradicts the psychosexual report. Specifically, when addressing the need to protect the public the court stated that it "thinks that the risks here are much greater because this defendant has demonstrated he can manipulate others, he can deceive others, and he's been able to successfully commit these acts over a time period through deceit and concealment."[4] Majors argues that this finding directly contradicts the conclusions of the psychosexual risk assessment and that the court abused its discretion in relying on its own conclusion rather than the conclusion of the report. His arguments fail for several reasons.

First, the risk assessment concluded that Majors was at moderate risk for reoffending. The district court's findings do not contradict this conclusion. Second, judges are "not only entitled to draw upon [their] experience when sentencing defendants, but should be encouraged to do so." *United States v. Ford*, 889 F.2d 1570, 1572 (6th Cir. 1989); *see also* 18 U.S.C. § 3553(a)(2)(C) (requiring judges at sentencing to independently assess a defendant's risk to the public). In *United States v. Cunningham*, the defendant cited evidence that indicated his chance of recidivism was 6.2%. 669 F.3d 723, 730 (6th Cir. 2012). The court then relied primarily on its own assessment that the defendant posed a much greater risk to the community than that statistic encapsulated. *Id.* at 728. This court affirmed the district court's consideration as "just the sort of consideration required by § 3553(a)." *Id.* at 731. However, in *United States v. Adams*, this court found procedural error where the district court had relied on an unsubstantiated claim by the government that it took at least eighteen months for the brain to "reset" from substance addiction. 873 F.3d

---

[4] The government correctly points out that Majors did not object to this statement at trial and contends therefore that plain error review applies. However, at the end of trial, Majors specifically objected that the court did not take into account "Mr. Majors' history and characteristics, moderate level of risk to reoffend, and high amenability to treatment." We will therefore proceed with abuse of discretion review.

512, 519 (6th Cir. 2017).  We remanded because the district court had explicitly relied upon "an unsubstantiated assertion that has the veneer of accuracy due to its supposed status as a product of scientific research."  *Id*.  Unlike in *Adams*, the court here was not relying on unsubstantiated scientific evidence, but rather was relying on its own assessment that the nature of the defendant's conduct (i.e., manipulation and deceit) demonstrated that Majors posed a risk.  This is precisely the type of consideration this court lauded in *Cunningham* and cannot be said to be an abuse of discretion here.

**B.** **The district court did not procedurally err when it did not sentence Majors based on his potential life expectancy.**

Majors asserts that the district court abused its discretion by basing the length of his sentence off its recollection of the Social Security tables' estimate of his life expectancy.  The Social Security actuarial table posted on its website indicates that Majors' life expectancy is approximately 78 years, not the "83" or "85" years the court seemed to think it was.  *Actuarial Life Table* (2016), *available at* https://www.ssa.gov/oact/STATS/table4c6.html.  Thus, Majors argues, the court abused its discretion because it relied upon "erroneous findings of fact" when it calculated his sentence, which is a form of procedural error.  *Moore*, 582 F.3d at 644 (internal quotation marks omitted).

Though the district court did reference Majors' life expectancy throughout the proceedings, it did not do so at all when explaining the reasoning behind its sentence.  The context of the court's statements regarding the Social Security tables reveals that it was merely responding to Majors' assertion that "360 months would constitute a life sentence."  Additionally, the sentence imposed by the district court exceeds its own erroneous estimation of Majors' life expectancy, suggesting that it was not relying on this estimate to calculate his sentence.  Furthermore, when Majors told the court that the life expectancy for white males in prison is lower than for those in the general

population, the court explicitly accepted the assertion, stating "I'll take your word for it." This suggests that the district court rejected the information from the Social Security tables and thus did not rely on the information Majors now contends was erroneous. His argument therefore fails on its face.

**C.      The court adequately explained its rationale for imposing the sentences consecutively.**

A challenge to the court's explanation of its decision to impose consecutive sentences attacks the procedural reasonableness of the sentence and is therefore ordinarily reviewed for an abuse of discretion. *United States v. King*, 914 F.3d 1021, 1024 (6th Cir. 2019). Here, however, while Majors did object to the substantive reasonableness of the consecutive sentences, he did not specifically object to the adequacy of the court's explanation at sentencing, and we therefore review the court's explanation for plain error. *Id.*

Here, the court provided an adequate explanation for its decision to impose consecutive terms of imprisonment. A court may explain its reasons for sentencing consecutively "either expressly or by reference to a discussion of relevant considerations contained elsewhere." *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012). The court discussed in great detail its reasoning for rejecting Majors' request for a downward variance, then later explicitly referenced that discussion when it imposed the consecutive sentences. "[W]hen the same reasons for rejecting a downward variance also support the decision for a consecutive sentence" there is no need for the court to repeat its analysis. *United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009). In this case, the court explained that it would not vary downwards because of the "seriousness of the offense," the need to deter this type of conduct, and "to protect the public from future crimes of the

defendant." These same reasons adequately explain the district court's imposition of consecutive rather than concurrent sentences. Thus, the district court did not commit plain error.

### D. The sentence was substantively reasonable.

The court reviews the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). In evaluating whether a sentence is substantively reasonable, we ask whether the district court imposed a sentence that is "greater than necessary" in light of the § 3553(a) factors. *Holguin Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020); *Perez-Rodriguez*, 960 F.3d at 753. Our review is "highly deferential" and sentences that fall within the guidelines range, as is the case here, are presumed reasonable. *Rayyan,* 885 F.3d at 442; *United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019).

Majors first argues that this sentence was substantively unreasonable because he did not receive any real benefit for pleading guilty. While he did receive a three-level reduction for acceptance of responsibility, Majors' reduced offense level was still above the guidelines' maximum offense level. As a result, his guidelines range was not affected. Though Majors argues that this demonstrates his sentence is inherently substantively unreasonable, he cites no law for this proposition. Majors also ignores the other benefits that may arise from pleading guilty, such as avoiding putting himself and his family through "the agony" of a trial. *Brady v. United States*, 397 U.S. 742, 750 (1970). This argument therefore is unavailing.

Majors next argues that the court lacked a rational basis for imposing the sentences for the two counts consecutively rather than concurrently. We must bear in mind that an "evaluation of the substantive reasonableness of a decision to impose a consecutive sentence depends heavily upon an evaluation of the procedural reasonableness." *United States v. Barahona-Sales*, 524 F.

App'x 235, 239 (6th Cir. 2013) (quoting *Berry*, 565 F.3d at 342). Having already determined that the decision was procedurally reasonable, we now consider whether it was substantively reasonable as well.

Here, contrary to what Majors asserts, the court actually did rely on a rational basis for its decision, demonstrated by its statement that it viewed "the seriousness of the offense" as the most important factor in sentencing. After "[c]onsidering the Section 3553 factors as well as the guidelines" the court then concluded that a within-guidelines sentence of 600 months was appropriate. Given the heinous nature of the crime, the level of deceit and manipulation Majors employed by hiding the sex toys and instructing his daughter not to tell anyone about the abuse, and the court's finding that "[i]t's hard to imagine an adult committing a more serious offense than what we have here," it is perfectly logical that the court would impose the maximum sentence allowed.

Majors also contends that the sentence is substantively unreasonable because it exceeds his actual life expectancy. Majors once again cites no case for the proposition that his actual life expectancy is a relevant consideration. Where there are multiple convictions and the guidelines range is greater than the statutory maximum, the guidelines recommend imposing the sentence on the second count consecutively to the first count "to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d). Majors argues that this calculation must be based on a numerical equivalent of life. But by this logic Majors' guidelines range should depend heavily upon his age at the time of sentencing, which stands in direct contradiction to Congress' mandate that the guidelines "avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." 28 U.S.C. § 991(b)(1)(B); *see, e.g., United States v. Herrick*, 512 F. App'x 534, 539 (6th Cir. 2013)

(upholding a sentence of 1,140 months' imprisonment, where the statutory maximum for the defendant's offenses was less than the guidelines range of life because "§ 5G1.2(d) permits the court to impose consecutive sentences where the statutory maximum is less than the total punishment.")  We find that the district court did not abuse its discretion in determining that the sentences should run consecutively in order to achieve the total punishment suggested by the guidelines.

### III.  CONCLUSION

Because Majors has failed to demonstrate that his within-guidelines sentence was procedurally or substantively unreasonable we **AFFIRM** the sentence given by the district court.